IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

NAJIY-ULLAH AZIYZ,     :
            :
    **Plaintiff,**   :
            :
**vs.**          :   **5:03CV412 (DF)**
            :
**TOMMY TREMBLE et al.,**  :
            :
    **Defendants.**  :

## O R D E R

This matter is before the Court on Defendants' motions to dismiss Plaintiff's complaint, as amended, and on Plaintiff's motion for leave to supplement his first amended complaint. On October 26, 2005, United States Magistrate Judge Claude W. Hicks, Jr., entered a Report and Recommendation, in which he recommended granting in part and denying in part Defendants' motions to dismiss, and denying Plaintiff's motion for leave to supplement (doc. 80). Both Plaintiff and Defendants have filed objections to the report and recommendation (docs. 81 & 85).

Having carefully considered the parties' arguments, the legal issues presented, the magistrate judge's report and recommendation, and the parties' objections thereto, the Court hereby grants in part and denies in part Defendants' motions to dismiss (docs. 8, 20, 53) and denies Plaintiff leave to supplement his first amended complaint (doc. 71). To the extent that the magistrate judge's report and recommendation is inconsistent with this Order, the report and recommendation is rejected.

## I.  FACTS AND PROCEDURAL BACKGROUND

Plaintiff Najiy-Ullah Aziyz is a Muslim prisoner in the custody of the State of Georgia.  When Aziyz brought this suit on December 5, 2003, he was confined at Hancock State Prison ("the prison") in Sparta, Georgia.[1]  Proceeding pro se, he filed a complaint in this Court under 42 U.S.C.A. § 1983 against two prison officials, alleging that the Georgia Department of Corrections ("DOC") maintained a written policy which regulated the wearing of Kufi caps—religious headwear worn by male adherents of the Muslim faith—in a manner violative of the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. (Compl., doc. 2, at 8.)  According to Aziyz, "[a] kufi or similar Islamic head wear should be worn by Muslim men and has religious significance for Muslims."  (Am. Compl., doc. 17, at 3.)  Aziyz's complaint seeks damages, as well as declaratory and injunctive relief.  (Compl., doc. 2, at 8, 15.)  He does not allege or seek recovery for a mental or emotional injury.

With regard to Muslim prisoners, the DOC's Standard Operating Procedures ("SOPs") are designed "[t]o describe guidelines pertaining to the Worship service, Islamic religious representatives, Jumah Prayer, Ramadan and meal requirements of the Islamic World religion;" and the SOPs apply to "All State institutions

---

[1] Aziyz is currently confined at a prison facility in Savannah, Georgia.  (Doc. 90, at 2.)

and Centers." (DOC SOP I & II, Br. Supp. Defs.' Mot. Dismiss, doc. 9, at 28.)

The specific SOP challenged by Aziyz states that: "Kufi prayer caps (small caps that

fit flush on the head) may be worn at religious services and in the inmate living area."

(DOC SOP VI.B.6, Br. Supp. Defs.' Mot. Dismiss, doc. 9, at 29.)

In his original complaint, Aziyz named as Defendants Tommy Tremble,

the prison's Chief of Security, and John Perry, the prison's Deputy Warden, alleging

that on two separate occasions he was required to remove his Kufi cap while other

inmates were permitted to wear non-religious headwear of their choosing. (Compl. ¶¶

8 & 23, doc. 2.) On neither occasion was Aziyz in an "inmate living area" or

attending a "religious service." Had he been, it is undisputed that he would have been

permitted to wear his Kufi cap.

On July 24, 2003, Aziyz was among the general prison population after coming

from a "call out" when Tremble asked him to remove his Kufi cap because he was not

in compliance with the prison policy. At the time, some prisoners were wearing non-

religious hats of varying styles and colors. Aziyz told Tremble he wished

to express himself to the same extent as other hat-wearing inmates expressing

themselves in a non-religious manner. Tremble ignored his request. Aziyz made the

same request of Perry, who had witnessed the encounter, but Perry refused to

intervene and told Aziyz to take his complaint up with the Warden. Aziyz then filed

3

an internal administrative grievance with the prison on July 24, 2003, "for discrimination and denial of religious expression." (Compl. ¶ 18, doc. 2.)  It was denied on August 19, 2003.  (Compl. ¶ 21, doc. 2.)

The same day his administrative grievance was denied Aziyz was again spotted wearing his Kufi cap in violation of the policy.  This time, as he walked by the window of the prison library, he drew the attention of Tremble, who came out of the library and instructed him to remove his cap.  (Compl. ¶ 23, doc. 2.)  Aziyz complied with Tremble's request.  This encounter took place outside of the prison, where, according to Aziyz, other prisoners were permitted to wear non-religious hats of their choosing.

Instead of filing an answer to Aziyz's complaint, Tremble and Perry filed a motion to dismiss, asserting that Aziyz's official-capacity damage claims against them are barred by the Eleventh Amendment and that each of them is entitled to qualified immunity with respect to Aziyz's individual-capacity damage claims. (Br. Supp. Defs.' Mot. Dismiss, doc. 9, at 3, 5.)

On April 19, 2004, while Tremble and Perry's motion to dismiss was pending, Aziyz amended his complaint[2] to name as Defendants the DOC itself,

---

[2] Though Aziyz filed a motion to amend his complaint, he did not need to.  Because Tremble and Perry's motion to dismiss was not a responsive pleading for purposes of Federal Rule of Civil Procedure 15(a), Aziyz was entitled to amend his complaint once as a matter of course.  *See* Fed. R.

the Commissioner of the DOC, James E. Donald, and the Facilities Director of the DOC, Alan A. Adams.  (Am. Compl. ¶¶ 6, 7, 8, doc. 17)  Aziyz also added claims for relief under the Free Speech Clause of the First Amendment, the "corresponding provision" of the Georgia Constitution, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C.A. § 2000cc–1 *et seq.* (West 2003), a statute that prohibits any federally funded state prison from substantially burdening the religious exercise of its prisoners.  Donald and Adams were each sued in their official and individual capacities.  (Am. Compl. ¶¶ 6, 7, doc. 17)

Shortly after Aziyz's first amended complaint was filed, Defendants collectively filed a second motion to dismiss addressing Aziyz's new claims.[3] In that motion, Defendants renewed their earlier arguments and, in addition, asserted that RLUIPA was unconstitutional because Congress, in enacting the statute, exceeded its legislative authority under the Commerce Clause and the Spending

---

Civ. P. 15(a) (West 2005); *see also* **Brewer-Giorgio v. Producers Video, Inc.**, 216 F.3d 1281, 1284 (11th Cir. 2000).

[3] At the time the second motion to dismiss was filed, the newly added Defendants—the DOC, Donald, and Adams—had not been served in accordance with the requirements of Federal Rule of Civil Procedure 4.  The unserved Defendants nevertheless joined in the motion to dismiss Aziyz's complaint, specifically preserving the right to assert the issue of defective service as a future defense to the Court's exercise of personal jurisdiction over them.  (Br. Supp. Defs.' Mot. Dismiss, doc. 21, at 3.)  At present, proper service has been made on all Defendants, thereby foreclosing any defective-service objections.

Clause, and because RLUIPA violated both the Tenth Amendment and the Establishment Clause of the First Amendment. (Br. Supp. Defs.' Mot. Dismiss, doc. 21, at 4.) Defendants notified the magistrate judge that, as of the filing of their motion to dismiss, a constitutional challenge to RLUIPA was pending in the United States Court of Appeals for the Eleventh Circuit. On May 7, 2004, accepting Defendants' invitation, the magistrate judge stayed consideration of their motion to dismiss pending the outcome of the decision of the Eleventh Circuit. *See* Order of May 7, 2004, doc. 22, at 2.

On December 2, 2004, the Eleventh Circuit issued its decision in ***Benning v. Georgia***, 391 F.3d 1299 (11th Cir. 2004), holding that "RLUIPA was validly enacted under the Spending Clause and does not violate either the Establishment Clause or the Tenth Amendment."[4]   391 F.3d at 1303. In light of this decision, the magistrate judge permitted Defendants to supplement their motions to dismiss. In Defendants' supplemental brief, they again asked the magistrate judge to stay the proceedings, this time because the Supreme Court of the United States had recently

---

[4] Defendants' RLUIPA challenge under the Spending Clause, the Establishment Clause, and the Tenth Amendment is therefore rejected without further comment. After the Eleventh Circuit's decision in ***Benning***, Defendants argue: (1) that RLUIPA represents an unconstitutional exercise of Congress's legislative authority under the Commerce Clause; and (2) that the State of Georgia has not waived its sovereign immunity under RLUIPA with respect to claims for money damages. The latter argument will be addressed below; the former will not be addressed at all, as RLUIPA has been held constitutional under the Spending Clause and need not be justified under any other of Congress's independent sources of legislative authority.

granted a writ of certiorari to resolve the circuit split over various constitutional challenges to RLUIPA.  (Br. Supp. Defs.' Mot. Dismiss, doc. 24, at 5.)   The proceedings were stayed once again.  *See* Order of March 2, 2005, doc. 33, at 2. On May 31, 2005, the Supreme Court issued its decision in ***Cutter v. Wilkinson***, ___ U.S. ___, 125 S. Ct. 2113 (2005), holding that RLUIPA does not improperly advance religion in violation of the Establishment Clause of the First Amendment.[5]  125 S. Ct. at 2124.   With the magistrate judge's permission, Defendants filed a second supplemental motion to dismiss.

In the brief accompanying their second supplemental motion, Defendants asserted for the first time that Aziyz's suit is subject to dismissal for failure to satisfy the "physical injury" requirement of the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C.A. § 1997e(e) (West 2003); that RLUIPA's sovereign-immunity waiver does not extend to claims against the state for money damages; and that RLUIPA does not authorize individual-capacity suits against state officials. (Br. Supp. Defs.' Mot. Dismiss, doc. 53, at 3-8.)

Effective July 1, 2005, the DOC revised its SOPs with respect to the wearing of Kufi caps.  The new SOPs provide that a "Kufi prayer cap[] . . . may be worn at any

---

[5] The Supreme Court declined to consider the respondents' challenges to RLUIPA under the Commerce Clause and the Tenth Amendment, as those arguments had not been addressed below by the Sixth Circuit.  125 S. Ct. at 2120 n.7.

time provided that it is a single ply fabric, it is white in color, and it does not present a safety or security issue" and that "religious prayer caps such as yarmulkes and kufie . . . and any other religious head wear may be worn at any time as long as it does not present any safety or security issue." (DOC SOP VI.B.2. & VI.A.8., Ex. 1, Defs.' Mot. Dismiss, doc. 53.)[6]

Shortly after responding to Defendants' motions to dismiss, Aziyz filed a motion for leave to supplement his first amended complaint to allege that the new SOPs are impermissibly vague under the Due Process Clause of the Fourteenth Amendment. (Pl.'s Mot. Supp., doc. 71, at 1.)  Defendants objected to Aziyz's proposal on the grounds that he was dilatory in moving to add the new claim, and on the grounds that Aziyz's proposed claim is directed at the implementation and enforcement of the new SOPs (i.e. an as-applied challenge).  Defendants therefore argued that Aziyz's motion to supplement should be denied because he had not exhausted his administrative remedies as required by the PLRA. (Defs.' Br. Opp'n Pl.'s Mot. Supp., doc. 72, at 3.)

---

[6] The revised SOPs further specify that:

> All requests from inmates that relate to religion are considered based on security interests of the facility.  A religious request that is considered to create a security issue or one that may cause a disruption in the normal operation of the facility, the least restrictive means approach should be applied.  A least restrictive means approach looks for accommodations or alternatives instead of complete bans.

DOC SOP VI.A., Ex. 1, Defs.' Mot. Dismiss, doc. 53.

On October 26, 2005, after considering Defendants' motions to dismiss, Aziyz's responses thereto, and Aziyz's motion to supplement, the magistrate judge entered a Report and Recommendation reaching the following legal conclusions: (1) Aziyz's RLUIPA claim against DOC is not barred by the Eleventh Amendment; (2) Defendants Tremble, Perry, Donald, and Adams cannot be sued under RLUIPA in their individual capacities; (3) Aziyz's claims for declaratory and injunctive relief have been mooted by the DOC's revision of the SOP that was in effect when this suit was initiated; (4) Aziyz's First Amendment claim is barred by the Prison Litigation Reform Act, 42 U.S.C.A. § 1997e(e), because he has not demonstrated a physical injury; and (5) Aziyz should not be permitted to supplement his complaint. The magistrate judge summarized: "the plaintiff's claims for relief under the RLUIPA and First Amendment should be DISMISSED except to the extent that plaintiff seeks nominal damages for violation of his First Amendment rights." R&R, doc. 80, at 6.

## II.  MOTION TO DISMISS STANDARD

When ruling on a motion dismiss under Federal Rule of Civil Procedure 12(b), the Court accepts as true all factual allegations stated in the plaintiff's complaint. *See Jean v. Dorelien*, 431 F.3d 776, 778 (11th Cir. 2005).  Furthermore, the Court resolves all ambiguities in favor of the plaintiff and will grant a motion to dismiss only when it appears beyond all doubt that there is no set of facts under which the plaintiff can legally prevail.  *Id.*

9

### III.  LEGAL DISCUSSION

In the course of these proceedings, Defendants have advanced a host of arguments in support of their motions to dismiss Aziyz's complaint.  Each argument is separately addressed below.   Because Defendants have invoked sovereign immunity as a defense to some of Aziyz's claims, and because the question of sovereign immunity is jurisdictional in nature, that issue will be resolved first.  *See **Seaborn v. Fla. Dep't of Corr.**,* 143 F.3d 1405, 1407 (11th Cir. 1998).

A.      *Sovereign Immunity Under § 1983 and  RLUIPA*

The Eleventh Amendment, which embodies the principle of sovereign immunity, provides in relevant part that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI.  Though not explicitly stated in its text, the amendment has long been interpreted to bar suits commenced or prosecuted against a state by its own citizens. *See **Hans v. Louisiana**,* 134 U.S. 1 (1890).  By its terms, the Eleventh Amendment applies to the "States," but it also provides immunity to state officials from official-capacity damage claims for which the state is the real party in interest, i.e., the entity responsible for satisfying any potential monetary liability. *See **Kentucky v. Graham**,* 473 U.S. 159, 165-66 (1985).  The Eleventh Amendment does not preclude official-

10

capacity claims against state officials for prospective injunctive relief to remedy violations of federal constitutional law.  *See Stevens v. Gay*, 864 F.2d 113, 114 (11th Cir. 1989).  Likewise, Eleventh Amendment immunity is not available to state officials sued in their individual capacities, regardless of the relief sought.  *See Miller v. King*, 384 F.3d 1248, 1260 (11th Cir. 2004) (noting that individual-capacity claims are subject to qualified immunity, not Eleventh Amendment immunity).

The privilege of sovereign immunity is not absolute.  A state may be sued in federal court if it waives its sovereign immunity, *see Stevens*, 864 F.2d at 114, or if Congress clearly and unequivocally abrogates its immunity pursuant to a statute validly enacted under § 5 of the Fourteenth Amendment.  *See In re Crow*, 394 F.3d 918, 921-22 (11th Cir. 2004).

Because the DOC is an arm of the State of Georgia, a suit against it (irrespective of the relief sought) is tantamount to a suit against the State itself.[7] As such, Aziyz's claims against the DOC are therefore precluded by the Eleventh Amendment unless Congress has properly abrogated the State of Georgia's sovereign

---

[7] With respect to Aziyz's official-capacity damage claims against Tremble, Perry, Donald, and Adams, those claims are hereby dismissed because they are treated as claims against the entity that employs them—the DOC—and the DOC is already a named defendant. *See Graham*, 473 U.S. at 166 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" of which the individual is an agent).  Aziyz's official-capacity claims against Tremble, Perry, Donald, and Adams for prospective injunctive relief are not affected by the Court's sovereign-immunity analysis because such claims are not treated as claims against the State and are thus not barred by the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123 (1908).

immunity or unless the State has waived its right to invoke sovereign immunity as a defense.

### 1.  42 U.S.C.A. § 1983

Aziyz has pleaded violations of the First and Fourteenth Amendments under § 1983.  Congress did not abrogate the sovereign immunity of the states when it enacted § 1983.  *See* ***Quern v. Jordan***, 440 U.S. 332, 341 (1979).  Nor does Aziyz allege that the State of Georgia has waived its immunity with respect to his § 1983 claims. The State's Eleventh Amendment immunity therefore remains intact. Consequently, all of Aziyz's § 1983 claims against the DOC are dismissed.[8]

### 2.  RLUIPA

#### a.      *Does RLUIPA Contain a Valid Sovereign-Immunity Waiver?*

Aziyz alleges that the DOC's Kufi policy imposes a "substantial burden" on his religious exercise in violation of RLUIPA, 42 U.S.C.A. § 2000cc–1 *et seq*.  Initially, the DOC asserted that it was immune from suit under RLUIPA by virtue of the Eleventh Amendment.  It is now clear, however, given the Eleventh Circuit's decision in ***Benning***, that the State of Georgia has waived its sovereign immunity with respect

---

[8] The Eleventh Amendment bars suits against the states and their agencies no matter what type of relief is sought. *See* ***Pennhurst State Sch. & Hosp. v. Halderman***, 465 U.S. 89, 100 (1984). In any event, even if Georgia were not able to assert sovereign immunity as a defense to Ayziz's claims, it still would not be subject to suit under § 1983 because a state is not a "person" as that term is used in the statute. *See* ***Will v. Mich. Dep't of State Police***, 491 U.S. 58, 71 (1989).

to prisoner suits brought under RLUIPA—a statute that explicitly conditions a state's receipt of federal funds on the state's waiver of sovereign immunity.  The Eleventh Circuit in **Benning** held that "Congress unambiguously required states to waive their sovereign immunity from suits filed by prisoners to enforce RLUIPA. . . . Georgia was on clear notice that by accepting federal funds for its prisons, Georgia waived its immunity from suit under RLUIPA."  391 F.3d at 1305-06.  Thus, the DOC is amenable to suit under RLUIPA, and its argument to the contrary is without merit.

> b.    *Does RLUIPA's Sovereign-Immunity Waiver Extend to Damage Claims?*

The DOC argues that even if it is subject to suit under RLUIPA in general, it may not be held liable for damages because Congress has not unambiguously extended RLUIPA's sovereign-immunity waiver to such claims.  According to the DOC, the Eleventh Circuit in **Benning** "made no determination that the State is subject to damages based upon this waiver [of sovereign immunity] as the issue was not raised in that case."  (Defs.' Obj. to R&R, doc. 81, at 2.)  The Court agrees.

Establishing that a state has waived its sovereign immunity under a federal statute is not in itself sufficient to demonstrate that the state is thereby subject to monetary liability.  "To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously

to such monetary claims." *Lane v. Pena*, 518 U.S. 187, 192 (1996).  This is because "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Id.*  If a statutory provision purportedly creating state liability for money damages is unclear and ambiguous on its face, it cannot effectively waive a State's sovereign immunity with respect to damage claims.  The Court must therefore begin and end its inquiry with the statute's text.  Extratextual sources such as "legislative history ha[ve] no bearing on the ambiguity point" because "the 'unequivocal expression' of elimination of sovereign immunity that [the Supreme Court] insist[s] upon is an expression in statutory text.  If clarity does not exist there, it cannot be supplied by a committee report." *United States v. Nordic Village Inc.*, 503 U.S. 30, 37 (1992).

RLUIPA provides that "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain *appropriate relief* against a government."  42 U.S.C.A. § 2000cc–2 (West 2003) (emphasis added).  Nowhere does the statute define the words "appropriate relief;" rather, courts are left to guess at whether Congress meant those words to indicate non-monetary relief, monetary relief, or both. Guessing, of course, would not be required if the statutory text were clear.  A reasonable argument can be made that Congress's broad phrasing was intended to encompass any form of relief deemed "appropriate" by the federal

courts—both monetary and non-monetary.  But if Congress had intended to make states liable for damages under RLUIPA, it could easily have said so.  As it stands, Congress did not speak with the clarity required by the Supreme Court, and § 2000cc–2 does not on its face indicate whether violations of RLUIPA are to be remedied with awards of money damages.  *See Farrow v. Stanley*, No. 02-567-PB, 2005 WL 2671541 at *11 n.13 (D.N.H. Oct. 20, 2005) ("There is substantial uncertainty, however, as to whether this language even provides a right to money damages.").

Because the statute is simply silent on this point, to the extent that Aziyz relies upon RLUIPA in asserting a claim for damages against the DOC, the Court concludes that § 2000cc–2 "fails to establish unambiguously that the waiver extends to monetary claims."  *Nordic Village, Inc.*, 503 U.S. at 34.

B.   *Are Individual-Capacity Claims Cognizable Under RLUIPA?*

The immunity from suit afforded by the Eleventh Amendment is not available to state officials sued in their individual capacities.  Thus, to avoid suit, Defendants Tremble, Perry, Donald, and Adams argue that they cannot be held personally liable for RLUIPA violations because individual-capacity claims are not cognizable under the statute.  However, because Congress included in RLUIPA language traditionally recognized as permitting individual-capacity lawsuits, the Court concludes that such suits are permissible and rejects Defendants' argument to the contrary.

15

RLUIPA permits a prisoner whose religious exercise has been substantially burdened to "obtain appropriate relief against a *government*."  42 U.S.C.A. § 2000cc–2(a) (West 2003) (emphasis added).  The individual Defendants argue, essentially, that claims against government officials in their individual capacities cannot be considered claims against a "government" because such claims, if successful, impose personal liability on the official, not the State.  While it is true that individual-capacity damage claims impose only personal liability, the Court is persuaded that such claims are fully contemplated by RLUIPA's definition of "government."

RLUIPA defines the term "government" by reference to three distinct categories of possible defendants: "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) *any other person acting under color of State law*."  42 U.S.C.A. § 2000cc–5(4)(A) (West 2003) (emphasis added).  Reading the relevant statutory provisions together makes it clear that an aggrieved prisoner may "obtain appropriate relief against," 42 U.S.C.A. § 2000cc–2(a), "any . . . person acting under color of state law."  42 U.S.C.A. § 2000cc–5(4)(A)(iii).

16

Defendants assert that, "[w]hile the definition of government includes, 'any person under color of state law' this in and of itself does not create an enforcement right against individual state employees." (Defs.' Br. Supp. Mot. Dismiss, doc. 53, at 7.) As support for the proposition that individual-capacity suits are not cognizable under RLUIPA, Defendants curiously rely on one inapposite case dealing with employer liability under the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12111, *et seq. See Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996). In *Mason*, the Eleventh Circuit held that an individual employee generally cannot be held liable as an "employer" under the terms of the ADA. *Id.* That holding has no bearing on the issue raised by Defendants' argument. Notably, the ADA does not contain statutory language even remotely resembling RLUIPA's operative language—"any other person acting under color of State law"—and for that reason Defendants' reliance on *Mason* is misplaced.

The Court finds support for its conclusion that individual-capacity suits are available under RLUIPA in the text and interpretive history of § 1983. Section 1983 makes it unlawful for any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to violate another person's constitutional or statutorily protected rights. 42 U.S.C.A. § 1983. In short, the statute imposes liability on those individuals who act "under color of state law." This language has

consistently been construed as creating personal liability against state actors sued in their individual capacities. *See* **Hafer v. Melo**, 502 U.S. 21, 27-28 (1991) (interpreting § 1983 and noting that "[t]he requirement of action under color of state law means that *Hafer may be liable* for discharging respondents precisely because of her authority as auditor general. We cannot accept the novel proposition that this same official authority insulates Hafer from suit.") (emphasis added).

In drawing an analogy between the language used in § 1983 and the language used in RLUIPA, the Court is guided by a familiar approach to statutory construction. It is well understood that "Congress is presumed to legislate against the backdrop of existing law." **Morgan v. Principi**, 327 F.3d 1357, 1361 (Fed. Cir. 2003) (citing **Cannon v. Univ. of Chi.**, 441 U.S. 677, 698-99 (1979)). Elaborating on this point, the Eleventh Circuit has observed: "We presume that Congress legislates against the backdrop of established principles of state and federal common law, and that when it wishes to deviate from deeply rooted principles, it will say so." **United States v. Baxter Intern., Inc.**, 345 F.3d 866, 900 (11th Cir. 2003). At the time Congress enacted RLUIPA in 2000, it was universally recognized that the phrase "under color of state law" used in § 1983 permitted individual-capacity suits against state actors. Because Congress was presumably aware of that longstanding interpretation when it defined the word "government" in RLUIPA, it is reasonable to

18

conclude that Congress intended to confer on plaintiffs the ability to hold individual state actors personally liable for violating RLUIPA's terms.

Indeed, as the Ninth Circuit noted in construing RLUIPA's predecessor statute—the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C.A. § 2000e *et seq.*, which defines the term "government" using language virtually identical to RLUIPA—

> We are not writing on a clean slate. Congress has used the key phrase—"acting under color of law"—before in other statutes, including 42 U.S.C. § 1983. When a legislature borrows an already judicially interpreted phrase from an old statute to use it in a new statute, it is presumed that the legislature intends to adopt not merely the old phrase but the judicial construction of that phrase. In the circumstances, the judicial interpretation of the phrase 'acting under color of law,' as used in 42 U.S.C. § 1983, applies equally in this RFRA action.

*Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 834-35 (9th Cir. 1999) (internal citations omitted).

The Court is confident that Congress's inclusion of the phrase "under color of state law" in RLUIPA was meant to enable plaintiffs to bring individual-capacity claims against government officials for violations of the statute. Therefore, the Court will not dismiss the individual-capacity claims against Tremble, Perry, Donald, and Adams on the grounds that such claims are unavailable under RLUIPA.[9]

---

[9] The Tenth Circuit has recognized that state officials are subject to suit in their individual capacities under RLUIPA. *See Ahmad v. Furlong*, ___F.3d___, 2006 WL 122454 at *1 (10th Cir. Jan. 18, 2006) (remanding for consideration of qualified-immunity defense to RLUIPA claim).

C.    *The Physical-Injury Requirement of 42 U.S.C.A. § 1997e(e)*

In addition to the sovereign-immunity and individual-capacity arguments addressed above, Defendants alternatively argue that Aziyz's suit is subject to dismissal under the Prison Litigation Reform Act of 1995 ("PLRA") because he has not demonstrated a prior physical injury.  This argument is without merit because the provision upon which it relies, 42 U.S.C.A. § 1997e(e), is not applicable to this case.

The PLRA provides in relevant part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, *for mental or emotional injury* suffered while in custody *without a prior showing of physical injury*."  42 U.S.C.A. § 1997e(e) (West 2003) (emphasis added).  The magistrate judge, relying on the decision of the Eleventh Circuit in ***Aziyz v. Chatman***, No. 02-16295 (11th Cir. July 17, 2003) (unpublished), construed this provision as barring Aziyz's First Amendment claim because Aziyz "has alleged no physical injury at all." R&R, doc. 80, at 6.  This conclusion is erroneous.

The operative phrase in § 1997e(e) is "for mental or emotional injury." These are the words that trigger the provision's application.  If a plaintiff is not attempting to recover for a mental or emotional injury, § 1997e(e) does not require him to demonstrate a physical injury in order to pursue his claim in court. It is obvious from a review of the allegations in Aziyz's complaint that he has not

20

asserted a claim for mental or emotional injury; rather, he asserts claims for declaratory and injunctive relief and for nominal damages based upon the deprivation of his First and Fourteenth Amendment rights and based upon a violation of RLUIPA.[10]

The Eleventh Circuit in *Aziyz* held that § 1997e(e) barred the plaintiff's First Amendment claim where the plaintiff had specifically pleaded a mental or emotional injury but was unable to demonstrate a physical injury, as required by the statute. But the case on which the *Aziyz* panel relied in reaching that conclusion, *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000) (en banc), held only that the "physical injury" provision of § 1997e(e) operated to bar constitutional claims where the plaintiff sought to recover for mental or emotional injury. In fact, as the court in *Aziyz* noted, the original three-judge panel in *Harris* left unresolved the question now before this Court, stating:

> We express no view on whether section 1997e(e) would bar an action for nominal damages that are normally available for the violation of certain 'absolute' constitutional rights, without any showing of actual injury. *See* **Carey v. Piphus**, 435 U.S. 247, 266 (1978). Plaintiffs have not sought nominal damages in this case, and so we do not address the issue.

---

[10] For the reasons stated above, Aziyz's § 1983 claims against the DOC are barred by the Eleventh Amendment, as are Aziyz's official-capacity claims for damages against Tremble, Perry, Donald, and Adams. Thus, Aziyz's claim for nominal damages is proper against the prison officials in their individual capacities only.

*Harris v. Garner*, 190 F.3d 1279, 1288 n.9 (1999).[11]

Aziyz seeks nominal damages in this case.  Because he does not seek to recover for mental or emotional injuries, and because the plain language of the PLRA makes it clear that the "physical injury" requirement does not apply in the absence of such claims, this Court rejects Defendants' argument that Aziyz's suit is subject to dismissal under § 1997e(e).

D.    *Qualified Immunity*

In their first motion to dismiss, Defendants Tremble and Perry argued that Aziyz's § 1983 individual-capacity damage claims were subject to dismissal on the grounds of qualified immunity.  (Br. Supp. Defs.' Mot. Dismiss, doc. 9, at 5.) In the second motion to dismiss, filed on behalf of all Defendants, the qualified-immunity argument was reasserted with respect to Aziyz's § 1983 claims.  (Br. Supp. Defs.' Mot. Dismiss, doc. 21, at 3.)  In the third motion to dismiss, Defendants were silent as to qualified immunity.  (Br. Supp. Defs.' Mot. Dismiss, doc. 53, at 1-8.)  At no time during the course of these proceedings have the individual Defendants ever invoked qualified immunity as a defense to Aziyz's RLUIPA claim.  Instead, they have relied on their assertion that individual-capacity suits are unavailable under the statute.  (*Id.* at 6-8.)

---

[11] The en banc court in *Harris* reinstated this portion of the original panel's opinion.

Qualified immunity is an issue that may be raised and addressed on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See **O'Rourke v. Hayes***, 378 F.3d 1201, 1206 (11th Cir. 2004); *see also **Snider v. Jefferson State Cmty. Coll.***, 344 F.3d 1325, 1327 (11th Cir. 2003); ***Chesser v. Sparks***, 248 F.3d 1117, 1121 (11th Cir. 2001).  A motion to dismiss on qualified-immunity grounds will be granted if the plaintiff's complaint "fails to allege the violation of a clearly established constitutional right."  ***Chesser***, 248 F.3d at 1121.  Thus, in deciding whether a defendant is entitled to qualified immunity at the motion to dismiss stage of a lawsuit, the Court must focus its inquiry on the alleged constitutional violations stated in the plaintiff's complaint and, as with all 12(b)(6) motions, must not take into consideration evidence beyond the pleadings.  In most cases this task presents no problem because entitlement to qualified immunity is a pure question of law that can be resolved without resort to facts beyond the face of the complaint.

Assuming that a defendant was engaged in a discretionary function at the time of the alleged constitutional violation (and thus entitled to invoke qualified immunity), the first inquiry in the qualified-immunity analysis is whether, accepting the plaintiff's factual allegations as true, a constitutional violation has in fact been alleged.  *See **Wilson v. Layne***, 526 U.S. 603, 609 (1999).  In light of the claims alleged in Aziyz's complaint—challenges to one of the prison's SOPs—and the sort

23

of context- and fact-dependent inquiry the Supreme Court requires when a prison regulation allegedly infringes on an inmate's constitutional right, *see Turner v. Safley*, 482 U.S. 78 (1987), the Court finds that it cannot rule on Defendants' § 1983 qualified-immunity defense without looking beyond the face of Aziyz's complaint.

Indeed, the Court notes that Defendants have supported their assertion of qualified immunity by submitting affidavits from prison officials describing the scope, purpose, and implementation of the SOP at issue.  In order to take those affidavits into account in assessing the regulation under *Turner*, the Court must either convert the motions to dismiss into a motion for summary judgment, *see* Fed. R. Civ. P. 12(b), or require that Defendants pursue their qualified-immunity defense in a separately filed motion for summary judgment.  The Court prefers the latter option.

The Court recognizes and appreciates the fact that determinations about qualified immunity should be made as early in the proceedings as is practicable so that those officials entitled to the immunity will not be forced to endure the costs of litigating a suit from which they are properly immune.  The Court will therefore permit Defendants to file a motion for summary judgment on the issue of qualified immunity with respect to Aziyz's § 1983 claims, accompanied by any supplemental materials they may deem appropriate.  In accordance with this Court's Local Rules, Aziyz shall then have 20 days within which to file a brief in response to Defendants'

motion, and Defendants shall have 10 days thereafter within which to file a reply brief.  *See* Local Rules 7.2 & 7.3.

Again, the Court notes that Defendants have not invoked qualified immunity with respect to Aziyz's RLUIPA claim.  Because qualified immunity is in the nature of a defense, the burden of establishing entitlement to its protection is on the party seeking immunity.  *See **Barker v. Norman***, 651 F.2d 1107, 1120 (5th Cir. Unit A 1981).[12]  Accordingly, the Court will not sua sponte consider the issue of qualified immunity as it relates to the alleged RLUIPA violation.  If Defendants wish to raise qualified immunity as a defense to that claim, they should do so in their motion for summary judgment.

E.    *Are Aziyz's Claims for Declaratory and Injunctive Relief Moot?*

Defendants argue, and the magistrate judge concluded, that Aziyz's claims for declaratory and injunctive relief have been rendered moot by the DOC's revision of the SOP giving rise to this lawsuit.  For the following reasons, the Court agrees and hereby dismisses all claims for declaratory and injunctive relief against all defendants.

---

[12] The Eleventh Circuit has adopted as binding precedent all decisions issued by the former Fifth Circuit prior to October 1, 1981.  *See **Bonner v. City of Prichard***, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

"Where a law is amended so as to remove its challenged features, the claim for injunctive relief becomes moot as to those features." ***Butler v. Ala. Judicial Inquiry Comm'n***, 261 F.3d 1154, 1157 (11th Cir. 2001).  Aziyz originally filed this action for the purpose of challenging a prison regulation that permitted the wearing of Muslim Kufi caps only at "religious services" or within "inmate living area[s]."  (DOC SOP VI.B.6, Br. Supp. Defs.' Mot. Dismiss, doc. 9, at 29.)  That regulation, as it was written in 2003, no longer exists.  It was revised effective July 1, 2005.  The policy currently governing the wearing of Kufi caps places no spatial restrictions on where the caps may be worn, instead stating that a Kufi cap "may be worn at anytime provided that it is a single ply fabric, it is white in color, and it does not present a safety or security issue." (DOC SOP VI.B.2, Ex. 1, Br. Supp. Mot. Dismiss, doc. 53, at 3-4.)

Because the regulation no longer restricts the wearing of Kufi caps in the manner Aziyz found legally objectionable, i.e., the SOP has been "amended so as to remove its challenged features," ***Butler***, 261 F.3d at 1167, and because the Court is satisfied that the harm of which he complained no longer exists, Aziyz's claims for declaratory and injunctive relief under RLUIPA and the First and Fourteenth Amendments are hereby dismissed as moot.

26

F.      *Aziyz's Motion to Supplement*

Before the magistrate judge entered his Report and Recommendation, Aziyz moved for leave to supplement his complaint with a new legal claim.  In his motion, Aziyz presents a challenge to the revised SOPs, alleging that they are void for vagueness under the Due Process Clause of the Fourteenth Amendment.  (Pl.'s Mot. Supp., doc. 71, at 1.)  Specifically, he maintains that because the words "safety or security issue" are undefined, prison officials have unbridled discretion to enforce the SOPs in an arbitrary manner.  Defendants opposed Aziyz's motion to supplement, asserting that he had not exhausted his administrative remedies.  (Br. Opp'n Pl.'s Mot. Supp., doc. 72, at 3.)  The magistrate judge recommended that Aziyz's motion to supplement be denied, reasoning that his Due Process claim is not sufficiently related to the claims in his first amended complaint and consequently should not be brought in this action.  R&R, doc. 80, n.3 at 6.

Aziyz's motion to supplement is governed by Federal Rule of Civil Procedure 15(d) because it seeks to add a new claim for relief based on a "transaction[] or occurrence[]" (the revision of the SOPs) that has "happened since the date of the pleading sought to be supplemented" (July 1, 2005).  Fed. R. Civ. P. 15(d) (West 2005).  The Court may permit a supplemental pleading to be filed "upon motion of a party" and "upon such terms as are just."  *Id.*

27

"A supplemental pleading may introduce new causes of action not alleged in the original complaint so long as their introduction does not create surprise or prejudice to the rights of the adverse party." *Health Ins. Ass'n of Am. v. Goddard Claussen*, 213 F.R.D. 63, 66 (D.D.C. 2003) (internal quotation marks omitted). In deciding whether to allow the filing of a supplemental pleading under Rule 15(d), courts apply the same standard used in evaluating motions to amend under Rule 15(a)—i.e. such motions are to be liberally construed and leave to file "shall be freely given when the interest of justice so requires." Fed. R. Civ. P. 15(a); *see also Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996) (Rule 15(a) standard applies to Rule 15(d) motions).

There is no indication that Aziyz has exhausted his administrative remedies with respect to his Due Process claim. Exhaustion of administrative remedies is a mandatory prerequisite to suit in prisoner litigation under the PLRA. *See* 42 U.S.C.A. § 1997e(a) (West 2003); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998). If Aziyz were permitted to supplement his complaint as he has proposed, his new claim would be subject to immediate dismissal because "[a] claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998).

28

Neither the interest of justice nor the aim of judicial economy would be served by allowing Aziyz to supplement his complaint with a claim that the Court would turn around and promptly dismiss.  Therefore, Aziyz's motion for leave to supplement is denied.

### III.  CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss (docs. 8, 20, 53) are hereby granted in part and denied in part,[13] and Aziyz's motion for leave to supplement (doc. 71) is hereby denied.  The Court summarizes its conclusions as follows:

1.   The "physical injury" requirement contained in § 1997e(e) of the PLRA does not apply to this action;

2.  All claims for declaratory and injunctive relief, against all Defendants, are **DISMISSED** as **MOOT;**

3.  All of Aziyz's § 1983 claims against DOC are barred by the Eleventh Amendment and are therefore **DISMISSED;**

4.  Aziyz's § 1983 official-capacity claims for damages against Tremble, Perry, Donald, and Adams are barred by the Eleventh Amendment and are therefore **DISMISSED;**

---

[13] Defendants' motions to dismiss are denied in part for the limited purpose of allowing them to file a motion for summary judgment on the issue of qualified immunity, an issue that cannot be resolved in this context without looking to evidence beyond the face of the pleadings.  *See supra.* at 22-25.

29

5.  Aziyz's RLUIPA claims for damages against DOC and against Tremble, Perry, Donald, and Adams in their official capacities are barred by the Eleventh Amendment and are therefore **DISMISSED;** and

6.  Aziyz's motion for leave to supplement is **DENIED.**

In light of the rulings reflected in this Order, the only matters left to be resolved in this lawsuit are Aziyz's § 1983 and RLUIPA claims for nominal damages against Defendants Tremble, Perry, Donald, and Adams in their individual capacities, including whether they are entitled to qualified immunity on these claims.

SO ORDERED, this 9th day of February, 2006.

**/s/ Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/sew