IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| NAJIY-ULLAH AZIYZ,<br><br>                      Plaintiff<br><br>VS.<br><br>TOMMY TREMBLE, *et al*,<br><br>                      Defendants | NO.  5: 03-CV-412 (DF)<br><br>PROCEEDINGS UNDER 42 U.S.C. §1983<br>BEFORE THE U. S. MAGISTRATE JUDGE |

## RECOMMENDATION

Before the court is the defendants' MOTION FOR SUMMARY JUDGMENT (Tab #95. Attached to the defendants' motion are a statement of facts not in dispute, a brief, and numerous affidavits and exhibits. The plaintiff has submitted a response to the defendants' motion (Tab #99) to which he has attached a number of exhibits and two affidavits, and a Statement of Disputed Material Facts (Tab #100).

### Procedural Background

The plaintiff filed this §1983 action in 2003 and this court stayed the proceedings twice because the constitutionality of the Religious Land Use and Institutionalized Persons Act (RLUIPA) – a statute central to the plaintiff's case – was being decided in the Eleventh Circuit[1] and later in the United States Supreme Court.[2] Since this case was filed, the prison policy around which this case centers has been changed. After the Supreme Court decided that the RLUIPA was constitutional and the prison changed the policy originally questioned, United States District Judge Duross Fitzpatrick ruled that the only issues left to be decided by this court were the plaintiff's claims against Defendants TREMBLE, PERRY, DONALD, and ADAMS in their individual capacities for nominal damages pursuant to the First Amendment and under the RLUIPA.[3]  Tab #94.

---

[1] ***Benning v. Georgia***, 391 F. 2d 1299 (11th Cir. 2004)

[2] ***Cutter v. Wilkinson***, ___ U.S. ___, 125 S. Ct. 2113 (2005)

[3] The plaintiff's claims (1) for declaratory and injunctive relief; (2) against the Georgia Department of Corrections; (3) against the defendants in their official capacity; and (4) regarding RLUIPA claims for damages against the DOC and the individual defendants were all dismissed.

**Statement of the Case**

This case was brought after defendants TOMMY TREMBLE, Hancock State Prison's Chief of Security, and JOHN PERRY, the prison's Deputy Warden, forced the plaintiff to remove his Kufi – a tight-fitting, brimless cap worn by some Muslim men – when he was not in a worship service or in his living quarters. TREMBLE and PERRY were enforcing SOP VA01-0008 VI (B)(6), a specific policy of the Georgia Department of Corrections (DOC).[4] Defendant JAMES E. DONALD is the Commissioner of the DOC, and defendant ALAN A. ADAMS is its Facilities Director. At issue before this court are whether SOP VA01-0008 VI(B)(6) [the original policy], as the defendants applied it to the plaintiff, violated the plaintiff's First Amendment right to freedom of religion or the RLUIPA which prohibits governments from instituting a substantial burden on the religious exercise of inmates. Also still in question is whether the defendants, as government employees, can assert the defense of qualified immunity which would shield them from suit unless their actions violated federal law that had been clearly established at the time of their actions.

**Summary Judgment Standard**

Rule 56 of the *Federal Rules of Civil Procedure* dealing with motions for summary judgment provides as follows:

> The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

- 2 -

---

[4]SOP VA01-0008 VI (B)(6) provided that "Kufi prayer caps (small caps that fit flush on the head) may be worn at religious services and in the inmate living area. . ." This policy has since been changed with the issuance of DOC SOP VI. B. 2 & VI. A. 8, effective July 1, 2005, which provides that a "Kufi prayer cap[]. . . may be worn at any time provided that it is a single ply fabric, it is white in color, and it does not present a safety or security issue" and that "religious prayer caps such as yarmulkes and kufie . . . and any other religious head wear may be worn at any time as long as it does not present any safety or security issue." *See* Defs.' Mot. Dismiss, Tab #53. The plaintiff's claims for injunctive relief have therefore been mooted and denied. *See* Tab #91.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c);* ***Warrior Tombigbee Transportation Co. v. M/V Nan Fung***, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See* ***Van T. Junkins & Assoc. v. U.S. Industries, Inc.***, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. ***Hairston v. The Gainesville Sun Publishing Co.***, 9 F.3d 913 (11th Cir.1998). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. ***Welch v. Celotex Corp.***, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. ***Clark v. Coats & Clark, Inc***., 929 F.2d 604, 608 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. ***Anderson v. Liberty Lobby, Inc***., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## Qualified Immunity

A public official performing a discretionary function enjoys qualified immunity in a civil action for damages, provided his or her conduct does not violate clearly established federal statutory or constitutional rights[5] of which a reasonable person would have known. ***Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982).

> Qualified immunity protects government actors performing discretionary functions from being sued in their individual capacities. The doctrine shields government officials from liability to the extent that their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. The doctrine protects government officials from always erring on the side of caution by shielding them both from liability and the other burdens of litigation, including discovery. ***Chesser v. Sparks***, 248 F.3d 1117, 1122-23 (11th Cir. 2001) (Internal citations and punctuation omitted).

"Evaluating the defense of qualified immunity involves a two step inquiry: first, whether the defendant's conduct violated a clearly established constitutional right; and, second, whether a reasonable government official would have been aware of that fact." *Id.* at 1123. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." ***Saucier v. Katz***, 533 U.S. 194, 202; 121 S.Ct. 2151, 2156 (2001).

## FACTS

Facts are determined in the light most favorable to the plaintiff and are as follows: At all times relevant to the case, plaintiff AZIYZ was an inmate in state custody at facilities under the control of the DOC. While incarcerated in Georgia prisons, inmates are subject to the DOC Standard Operating Procedures (SOP), which include regulations regarding the inmates' attire, including religious and nonreligious headwear and accessories.

- 4 -

---

[5] While most case law defining the parameters of qualified immunity deals with constitutional violations, qualified immunity is equally applicable to federal statutory law. *See **Gonzalez v. Lee County Housing Authority***, 161 F. 3d 1290 n. 34 (11th Cir. 1998) (citing eleven Eleventh Circuit cases in which government actors have been entitled to qualified immunity with respect to alleged statutory violations).

As a Muslim of Ahlus-Sunnah wal Jama'ah — or Sunni Mislim — wearing a Kufi is a fundamental part of the plaintiff's religion. Plaintiff's Third Affidavit, Tab #99. He believes that Muslim men are to be distinct in their dress from non-Muslims and that the wearing of a Kufi accomplishes this differentiation while also demonstrating a submission to Allah; the wearing of a Kufi is akin to a constant state of prayer. *Id*. at ¶ 7.

At the time this suit was instituted, DOC policy permitted inmates to wear Kufi caps at religious services and in the inmate's living area but not elsewhere on the prison grounds. The defendants forced the inmates to adhere to the DOC policy. The policy was designed to maintain security by preventing inmates from distinguishing themselves as a member of a specific group, sect, or gang. Affidavit of James L. Allen, Def. Ex. 1 at ¶¶ 5, 6, & 8. Other inmates, however, were at times permitted to wear headwear other than Kufi (such as baseball caps and toboggan-type caps) on prison grounds although SOP forbade them from doing so. *Id.* at ¶¶ 7 & 9.

## DISCUSSION

### FIRST AMENDMENT CLAIM

> The Supreme Court has established four factors to be considered in determining the reasonableness of a [prison regulation that infringes on a First Amendment right]: "(1) whether the regulation has a valid, rational connection to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and inmates and prison resources; and (4) whether there are ready alternatives to the regulation." ***Asad v. Bush***, 170 Fed. Appx. 668 (11th Cir. 2006) (*Quoting* ***Overton v. Bazzetta***, 539 U.S. 126, 136, 123 S. Ct. 2162, 156 L. Ed.2d 162 (2003))

"The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." ***Overton,*** 539 U.S. at 132 (internal citations omitted). Additionally, courts "must accord substantial deference to the professional judgment of prison administrators". ***Id.***

The defendants contend that the regulation regarding inmates' wearing Kufie was instituted to maintain prison security by not allowing inmates to distinguish themselves as a part of a specific group, because distinguishment could lead to unrest among different groups of prisoners. Affording prison officials proper deference, the undersigned finds that there is a valid, rational connection between the regulation and the legitimate government interest of prison safety.

The defendants believed that their permitting the plaintiff and other Muslim men to wear Kufie *at all times* represented a security threat to all prisoners and guards at the institutions where the plaintiff was housed. The defendants enforced the policy as written, which allowed the plaintiff to wear his Kufi while in his living area and when at religious services, thereby allowing him an alternative means — or at least partial means — of exercising his faith. While that policy did not totally accommodate his religion, some liberties and rights must be surrendered by a prisoner in order to ensure a proper prison environment. *See **Id***.

The only alternative to the regulation that would be acceptable to plaintiff AZIYZ would have been permission to wear his Kufi at all times. As discussed above, prison administrators felt that the potential danger of prison unrest outweighed any strain put on the plaintiff's religion; the undersigned will defer to them on issues of maintaining order at a prison.[6]

**RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT (RLUIPA)**[7]

The RLUIPA (42 U.S.C. §2000cc-1(a)) provides:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

- 6 -

---

[6] While the prison has since changed its policy to allow inmates to wear Kufie at all times, for the time period in question in this case, the administrators felt that such a policy would represent too great a burden on prison safety, and their opinions are entitled to substantial deference.

[7] For a full discussion of the RLUIPA in the Eleventh Circuit, including application of qualified immunity, *see **Smith v. Haley***, 401 F. Supp. 2d 1240 (M.D. Ala. 2005).

"Requiring a state to demonstrate a compelling interest and show that it has adopted the least restrictive means of achieving that interest is the most demanding test known to constitutional law". *City of Boerne v. Flores*, 521 U.S. 507, 534, 117 S. Ct. 2157, 2171 (1997) (interpreting identical language used in RLUIPA's predecessor the Religious Freedom Restoration Act of 1993[8]).  The Eleventh Circuit in *Lawson v. Singletary*, 85 F. 3d 502 (11th Cir. 1996) provides a discussion regarding the "least restrictive" test with respect to the Religious Freedom Restoration Act and states that "Congress intended this second RFRA prong to be no more vigorous that its corresponding incarnation in [*Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800 (1974)]." *Martinez* holds that "limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id*. at 413.

A threshold issue to be addressed when dealing with the RLUIPA is whether individuals acting under the color of state law can be held individually liable for nominal damages pursuant to the Act.  It appears that no circuit has decided this issue, and decisions appear to be conflicting in the Eleventh Circuit.[9]

The term "government" as defined in the statutory text means:

(i) a State, county, municipality, or other governmental entity created under the authority of a State;
(ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and
(iii) *any other person acting under color of State law;* . . .
   42 U.S.C. § 2000cc-5(A) (Emphasis added).

Because the RLUIPA defines "government" as persons acting under the color of state law, the undersigned believes that Congress intended to hold such individuals liable for damages individually in the same manner as provided in actions brought under 42 U.S.C. §1983.

- 7 -

---

[8]*City of Boerne* found the Religious Freedom Restoration Act to be unconstitutional when applied to states on other grounds. RLUIPA's constitutionality is settled law.  *Cutter v. Wilkinson*, ___ U.S.___, 125 S. Ct. 2113 (2005)

[9]*Compare **Smith**, supra* ("Because there is simply nothing in the statute that clearly suggests that government employees can be liable for damages in their individual capacities, the court doubts that RLUIPA provides for such") *with **Daker v. Ferrero***, 2006 WL 346440 (N.D. Ga., 2006) ("[T]his Court reads the RLUIPA to permit suit against state officials in their individual capacities.").

Under the RLUIPA, the court must determine whether prohibiting the plaintiff from wearing a Kufi *at all times* is a substantial burden on his ability to exercise his religion. Curiously, the defendants cite a Seventh Circuit case (***Civil Liberties for Urban Believers v. City of Chicago***, 342 F.3d 752, 761 (7th Cir.2003)) which gives a definition of "substantial burden" that has been specifically rejected in this circuit: "[W]e decline to adopt the Seventh Circuit's definition-which would render § b(3)'s total exclusion prohibition meaningless". ***Midrash Sephardi, Inc. v. Town of Surfside***, 366 F.3d 1214, 1227(11th Cir. 2004). The Eleventh Circuit instead has held that "an individual's exercise of religion is 'substantially burdened' if a regulation *completely* prevents the individual from engaging in religiously mandated activity, or if the regulation requires participation in an activity prohibited by religion." (Emphasis added) ***Id.*** at 1227, *citing* ***Cheffer v. Reno***, 55 F.3d 1517, 1522 (11th Cir.1995).

The defendants have submitted the affidavit of A.J. Sabree[10] in which he avers that "it is tradition for Kufi caps to be worn by Muslims[;] it is not a requirement". Sabree Aff. (Tab #95, Attachment #6) at ¶13. The plaintiff contends, however, that as a Sunni Muslim, it is more than tradition and rather a part of his faith that he wear a Kufi. Third Ayziz Affidavit (Tab #99, Attachment #3) at ¶13. In the light most favorable to the plaintiff, his being forced to remove his Kufi at any time represents an activity prohibited by his religion and therefore is a substantial burden on his religious exercise.

If the substantial burden is not imposed in furtherance of a compelling governmental interest, it automatically violates the Act. Prison authorities contend that the policy in question regarding wearing the Kufie was instituted in order to maintain security by preventing inmates from identifying themselves as members of a certain group, sect, or gang. Def. Ex. 2 (Tab #95) at ¶8. Prison security is a compelling government interest. ***Fawaad v. Jones***, 81 F.3d 1084 (11th Cir.

- 8 -

---

[10]Mr. Sabree is has been a Correctional Chaplain and an Islamic Imam since 1975. Sabree Aff. at ¶5. The plaintiff avers that Mr. Sabree "follows the teachings of W. Deen Muhammad . . . and his ministry 'The Mosque Cares'", which differs from the plaintiff's faith. Third Ayziz Affidavit at ¶14.

1996). While the plaintiff claims that the defendants have not demonstrated that inmates' association with religious groups is a problem in state prisons, undoubtedly it is as much of a potential problem as it is in the free world. In the view of the undersigned, prison officials are entitled to deference with respect to prison policy. Thus the policy implemented is in furtherance of a compelling governmental interest.

The final prong set forth by 42 U.S.C. §2000cc-1(a) is whether the regulation is the least restrictive means of furthering that compelling governmental interest. Because the SOP's have changed since this suit was initiated with respect to inmates' wearing Kufie, it appears that there did exist a less restrictive means of maintaining prison security — specifically, allowing for inmates to wear single-ply white Kufie anywhere on prison grounds, subject to a catchall security provision. Since there was a means to maintain prison security that would not have infringed on the plaintiff's religion, the plaintiff's rights established under the RLUIPA were violated.

## Qualified Immunity

As discussed above, qualified immunity requires a two-step inquiry. First, whether a federal right was violated, and second, whether that right was clearly established. Having found that plaintiff's right pursuant to the RLUIPA was violated, we need only discuss whether that specific right was clearly established. No cases in this circuit have dealt with this specific issue. With respect to qualified immunity, the issue is whether a reasonable person presented with the situation before the court would *clearly* realize that his conduct was unlawful. If the defendants did not know that they were preventing plaintiff AZIYZ from engaging in a religiously *mandated* activity, they are shielded from damages by qualified immunity. In this case, the court cannot impute to the defendants knowledge that the plaintiff's faith r*equired* him to wear a Kufi at all times. Even if the defendants themselves were of the Muslim faith, it would be difficult to conclude that they had knowledge of any *requirement* to wear the Kufi at all times or whether the wearing of the Kufi was simply a tradition.

As noted above, there is even a difference of opinion between plaintiff AZIYZ and [Islamic Imam] Chaplain Sabree on this issue.[11]  Hence, the undersigned cannot find that plaintiff had a *clearly established* federal statutory or constitutional right of which a reasonable person would have known.  **Harlow v. Fitzgerald, *supra*.**  Therefore, the defendants are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the defendants' MOTION FOR SUMMARY JUDGMENT be GRANTED on grounds of qualified immunity as to the First Amendment issues and as to issues presented under the RLUIPA.  Pursuant to 28 U.S.C. §636(b)(1), the parties may file written objections to this RECOMMENDATION with the Clerk of court directed to the district judge assigned to this case, **WITHIN TEN (10) DAYS** after being served with a copy thereof.

The Clerk is directed to serve the plaintiff with a copy of this order by mailing it to him at the LAST ADDRESS provided by him.

SO RECOMMENDED, this 8th day of SEPTEMBER, 2006.



                        CLAUDE W. HICKS, JR.
                        UNITED STATES MAGISTRATE JUDGE

---

[11] Significantly, plaintiff AZIYZ has provided nothing but his own statement in support of his contention that his religion *requires* him to wear a Kufi at all times.